ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| AARON LE VON JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 306-100 |
| | ) |
| THURBERT E. BAKER, Attorney General, JAMES E. DONALD, JACQUILINE BUNN, FRED BURNETTE, PAT ETHEREDGE, MARK FARRIS, BARBARA GRANT, DENNIS C. MCCRANIE, MARVIN MADISON, STEPHEN HART, PERRY HAMILTON, and GLEN JOHNSON, | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

*Pro se* Plaintiff, an inmate incarcerated at Telfair State Prison in Helena, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. He has paid the filing fee of $350.00 in full, and therefore, is not proceeding *in forma pauperis* ("IFP"). As Plaintiff is not proceeding IFP, his amended complaint (doc. no. 29) is not subject to 28 U.S.C. § 1915(e)(2)'s screening provision.[1] Farese v. Scherer, 342 F.3d 1223, 1228 (11th Cir. 2003) ("Logically, § 1915(e) only applies to cases in which the plaintiff is proceeding IFP"). However, because Plaintiff is a prisoner seeking redress against governmental

---

[1] Plaintiff filed his amended complaint in compliance with this Court's May 31, 2007 Order. (See doc. no. 26).

entities, employees, or officers, his complaint is subject to screening under 28 U.S.C. § 1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. 28 U.S.C. § 1915A; Thompson v. Hicks, No. 06-14110, 2007 WL 106785, at *2 (11th Cir. Jan. 17, 2007) (*per curiam*). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may review Plaintiff's complaint and dismiss the complaint, or any part thereof, if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. See 28 U.S.C. § 1915A.

## I. BACKGROUND

While the nature of Plaintiff's complaint is difficult to discern, it appears that he believes he is being illegally detained. He also asserts that he has been denied adequate access to the law library, and he claims that some prison officials have otherwise treated him unfairly.

Plaintiff begins his statement of claims by asserting a "Violation to U.S. Constitutional Rights to Access Courts." (Doc. no. 29, p. 5). In support of this allegation, Plaintiff asserts that Defendants Bunn, Baker, Donald, Burnette, and Etheredge prevented him from presenting his allegedly meritorious claim that the judgment entered against him in Fulton County, with regard to a juvenile court proceeding, was void ab initio. See Johnson v. Baker, CV 05-292 (Ga. Super. Ct. Dec. 20, 2005). Plaintiff maintains that Defendant Bunn, an Assistant Attorney General for the State of Georgia, provided a proposed order that recommended dismissal of Plaintiff's claims based on a finding that he failed to exhaust his administrative remedies and that his claims were time-barred. (Id.). Plaintiff asserts in conclusory fashion that this proposed order was fraudulent. (Id.). He then claims

that the above-named Defendants allowed the Honorable H. Frederick Mullis, Jr., Telfair County Superior Court Judge, to enter this allegedly fraudulent proposed order dismissing Plaintiff's state civil rights claim. (Id.). Finally, Plaintiff states that the allegedly fraudulent order allowed evidence to be concealed and impeded Plaintiff from obtaining evidence for his complaint to federal agencies that showed that the state kidnaped his child on October 5, 2001, and him on October 19, 2001, and are actively covering it up. (Id.). Plaintiff concludes by stating he was prevented from presenting his meritorious claim that the juvenile court order from October 8, 2001 is void ab initio and that his conviction and sentence are void ab initio, as they are purportedly based on the juvenile court's void ab initio order.[2]

Plaintiff also contends that his constitutional right of access to the courts has been violated because, on several occasions, he has been denied access to the law library. Generally, according to Plaintiff, he missed his scheduled law library times because he was placed in the "hole," or in isolation, for various reasons that Plaintiff does not believe warranted his placement therein. (Doc. no. 29, pp. 8-11). Plaintiff claims that he was placed

---

[2]By way of background, Plaintiff was granted legal custody of his daughter under a California divorce decree. In re: A. J. a child, A04A1343 (Ga. Ct. App. Sept. 14, 2004). The Georgia Department of Human Resources was subsequently granted temporary legal custody of Plaintiff's daughter upon a 2001 juvenile court order determining that the child was deprived because of child molestation by Plaintiff. (Id.). Plaintiff was then convicted of one count of child molestation and two counts aggravated child molestation and was sentenced to fifty years in prison. See http://www.dcor.state.ga.us, offender query (last visited Sept. 18, 2007). Plaintiff's conviction for engaging in sexual activity with his then nine-year-old daughter was affirmed on appeal. Johnson v. State, 616 S.E.2d 848, 849 (Ga. Ct. App. 2005). Plaintiff has since filed several civil actions in state and federal court - attacking the juvenile court finding that his daughter was deprived - in an apparent attempt to regain custody of his daughter. One such case was Johnson v. Baker, CV 05-292, wherein Plaintiff sought relief from the juvenile court hearing that occurred in Fulton County in 2001.

in the "hole" (1) by Defendant Burnette for leaning on his crutches (id. at 8); (2) by Defendant Hamilton for what Plaintiff describes as a "fraudulent incident," though he does not elaborate as to what the alleged fraudulent incident was (id.); (3) by Defendants Farris, Johnson, and Madison, this time for not greeting the inspection team with the requisite, "Sir, good morning sir" (id.); (4) for an incident involving Defendants Hamilton, Etheredge, and Spin, in which Plaintiff claims he was made to shave even though he had a medical profile for a 1/8th inch beard (id. at 9); (5) for allegedly closing the door on Defendant Madison (id. at 11); and, (6) again for allegedly failing to greet the inspection team. (Id.).

Plaintiff also makes a retaliation claim against Defendant Grant and Defendant Burnette. (Id. at 9). According to Plaintiff, he received a disciplinary report, while in the "hole," for having his hair too long. (Id.). In a disciplinary hearing, Defendant Grant found Plaintiff guilty of the offense, though, according to Plaintiff his hair was nowhere near the maximum length allowed. As a result, Defendant Grant placed Plaintiff on phone restrictions. Plaintiff alleges that these restrictions hindered his ability to prepare for his proceedings regarding his writ for certiorari and to prepare for an upcoming hearing in his state case, Johnson, CV 05-292. (Id.).

Plaintiff also asserts a retaliation claim against Defendant Burnette. Plaintiff provides that he had been in lock down for resting on his crutches. While Plaintiff was locked down, he missed his scheduled law library time, and thus, Plaintiff filed a grievance. On June 21, 2005, Defendant Burnette summoned Plaintiff to discuss this grievance. According to Plaintiff, Defendant Burnette proceeded to verbally assault Plaintiff and threatened to put Plaintiff in the hole. Notably, however, Plaintiff does not claim that he was actually put in

4

the hole or otherwise hindered in pursuing his grievance.

Next, Plaintiff contends his due process rights were violated when Defendants Hart and Smith removed his Dungeon and Dragons game materials and books from his cell, and refused to return them unless he agreed to exchange the game materials for his legal books and materials. (Id. at 10). Finally, Plaintiff seeks reimbursement from Defendant Burnette, in the amount of $103 - $105 per week, for the amount Plaintiff was "required" to pay an inmate to buff his cell floor. (Id. at 11). Allegedly, Defendant Burnette reprimanded Plaintiff for not having a buffed and shiny cell floor. According to Plaintiff he explained to Defendant Burnette that both he and his cell mate were medically disqualified from buffing floors. (Id.). Defendant Burnette then allegedly retorted that Plaintiff should pay someone to do it, or he would be sent to the "hole." (Id.). Thus, the payment Plaintiff seeks from Defendant Burnette is the amount he has had to pay an inmate to buff his cell floor. (Id.).

The Court will address Plaintiff's claims in turn.

## II. DISCUSSION

### A. Challenge of State Court Decisions

Although Plaintiff attempts to classify his first claim as one for denial of access to the courts, for the second time, Plaintiff is actually attempting to attack his criminal conviction by asserting that his conviction and sentence are void ab initio.[3] (Doc. no. 29, p. 5). Plaintiff raised this exact claim in the complaint he filed in Johnson v. Baker, et al., CV 306-022 (S.D. Ga. Apr. 4, 2006). In that 2006 case, the Honorable John F. Nangle, United

---

[3]According to Plaintiff, his conviction and sentence were based on the juvenile court's void ab initio order. (Doc. no. 29, p. 5).

5

States District Judge, dismissed the majority of Plaintiff's complaint for lack of exhaustion. Judge Nangle also addressed the merits of Plaintiff's claim challenging the "void ab initio" conviction, explaining that this claim was barred by Heck v. Humphrey, 512 U.S. 447, 489 (1994), which concluded that a claim for damages bearing a relationship to a conviction or sentence that has not been invalidated is not cognizable under § 1983. (Id.). As Plaintiff's claim on this issue has previously been rejected by Judge Nangle, the current claim challenging the the "void ab initio" criminal conviction and sentence should be **DISMISSED**.

Plaintiff also claims that the juvenile court's order determining that his daughter was considered deprived is void ab initio. Plaintiff has already tried a two-pronged attack on this point. On the one hand, Plaintiff filed a civil law suit in the United States District Court for the Northern District of Georgia attacking the juvenile court's determination. Johnson v. Sanders, CV 105-2622 (N.D. Ga. 2005). Plaintiff also filed a civil action in the Telfair County Superior Court. Johnson, CV 05-292. Plaintiff failed to obtain his sought-after relief in both cases.

The Honorable William S. Duffey, Jr., United States District Judge, rejected Plaintiff's claim attacking the juvenile court's order, dismissing Plaintiff's claim for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. Johnson, CV 105-2622, doc. no. 9. The Court need not repeat Judge Duffey's ruling in detail here, but will rely on a similar analysis to address Plaintiff's current attack on Judge Mullis's order out of the Telfair County Superior Court.

The United States Supreme Court has determined that a federal district court has no

authority to review the final judgments of a state court in judicial proceedings. Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); Dist. of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983). Review of such judgments may occur only in the United States Supreme Court. Feldman, 460 U.S. at 482. Thus, to the extent a party files suit in federal court seeking relief from a final judgment of a state court, the district court lacks jurisdiction to adjudicate the case. Id.

The Rooker-Feldman doctrine, as it has come to be known, applies to (1) claims actually raised in state court and (2) claims that were not raised but are "inextricably intertwined" with the state court's judgment. Powell v. Powell, 80 F.3d 464, 466 (11th Cir. 1996) (citing Feldman, 460 U.S. at 482 n.16). If either of these circumstances applies to the litigation in federal court, the district court lacks subject matter jurisdiction and is barred from adjudicating the case on the merits. Nevertheless, even if a claim is "inextricably intertwined" with the state court's judgment, the doctrine does not apply if the plaintiff had no "reasonable opportunity to raise his federal claim in state proceedings." Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001).

A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Id. (citing Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000) (*en banc*)). In resolving this relationship, a court must focus on the federal claim's relevance to the issues involved in the state court proceeding instead of on the relief sought by the plaintiff in the federal proceeding. Id. at 1333.

Here, the Rooker-Feldman doctrine presents a jurisdictional bar to Plaintiff's claims

7

attacking both state court judgments as void. Similar to Judge Duffey's finding that Plaintiff's claim attacking the juvenile court's order was barred by the Rooker-Feldman doctrine, this Court concludes that Plaintiff's claim attacking Judge Mullis's order is also barred by the Rooker-Feldman doctrine. Simply put, this Court cannot issue an order declaring Judge Mullis's order, issued in a Superior Court of Georgia, void. Accordingly, Plaintiff's claims challenging the allegedly void ab initio orders of the juvenile court and the Superior Court of Georgia should be **DISMISSED**.

**B.     General Conspiracy**

To the extent Plaintiff suggests that there was some sort of conspiracy afoot between Defendants Bunn, Baker, Donald, Burnette, and Etheredge that prevented him from presenting his allegedly meritorious claim collaterally attacking his underlying criminal conviction and/or an order of the juvenile court, such an allegation fails to state a claim upon which relief can be granted. That is, a conspiracy claim supported only by conclusory, vague, and general allegations may be dismissed. Kearson v. Southern Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (*per curiam*); see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . It is not enough to simply aver in the complaint that a conspiracy existed."). To prove conspiracy under § 1983, a plaintiff must (1) prove the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong to support the conspiracy. Bailey v. Board of County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication . . . ." Id.

8

Here, Plaintiff does not offer any specifics on when or how an agreement between any persons, let alone an agreement involving a Judge of the Superior Court of Telfair County, may have been reached to violate Plaintiff's rights. Accordingly, Plaintiff has failed to state a viable conspiracy claim, and thus, such claims should be **DISMISSED**.

C.   **No Denial of Access to the Courts**

Plaintiff also asserts several denial of access to the courts claims based on allegations of several missed scheduled visits to the law library. Plaintiff asserts that missing his scheduled law library time was "crucial because he was preparing for a June 27, 2005, hearing" for his state case. (Doc. no. 29, p. 8). Plaintiff asserts that missing his scheduled law library time was "vital to his appeal of his dismissed mandamus." (Id.). Next, Plaintiff asserts that missing his scheduled law library time impacted him because he had just filed a civil complaint in Johnson, CV 05-292, in the Superior Court of Telfair County against some of the Defendants named in this case. (Id.). Plaintiff also asserts that he missed four scheduled law library days just before his state habeas hearing. (Id. at 11). Finally, Plaintiff asserts that because of missed scheduled law library time, he "couldn't properly prepare for his state habeas corpus attacking his void ab initio [sic] conviction and sentence." (Id. at 11, 12).

Even though Plaintiff's amended complaint names specific Defendants with respect to these claims, Plaintiff has not set forth an actual injury sufficient to state a cause of action for his denial of access to the courts claims. To state a viable denial of access to the courts claim, a Plaintiff must plead and prove actual injury to existing or contemplated litigation or nonfrivous (and therefore viable) claims challenging Plaintiff's sentence or conditions of

confinement. Lewis, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement."). The Eleventh Circuit has clarified the requirements for pursuing a denial-of-access-to-the-courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Although Plaintiff states in a conclusory fashion that his missed law library time was "crucial to, vital to, and that he could not properly prepare for" other civil actions he filed, Plaintiff alleges no facts which demonstrate that he had possibly viable claims that simply suffered from deficiencies that could have been cured through additional time in the law library. Moreover, Plaintiff does not claim that he was denied all access to legal material, only that he was denied access to the library on certain occasions, during his scheduled times. As such, Plaintiff's denial of access to the courts claims based on missed visits to the law

10

library should be **DISMISSED**.

D. **Alleged Retaliation Claim**

Plaintiff also attempts to assert a retaliation claim against Defendant Grant and Defendant Burnette. Plaintiff complains that Defendant Grant improperly found Plaintiff guilty of wearing his hair too long, and as a result of the disciplinary proceeding, Plaintiff's phone access was restricted. Plaintiff also complains of retaliation by Defendant Burnette because during their discussion regarding the grievance Plaintiff had filed, Defendant Burnette threatened Plaintiff verbally, including a threat to put Plaintiff in the "hole."

Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may state a cognizable § 1983 claim by alleging that the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit clarified the standard for asserting a cognizable retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254. Even considering Plaintiff's allegations as true, he does not assert that Defendant Grant's actions were a result of Plaintiff having filed a grievance or a lawsuit regarding the conditions of imprisonment or exercising any other First Amendment Right, let alone that he was deterred from exercising a First Amendment right by Defendant Grant's actions. At best, Plaintiff simply

11

alleges that not having access to a phone hindered his preparation for his upcoming hearing in his state case, Johnson, CV 05-292.[4]

Moreover, to the extent Plaintiff asserts Defendant Burnette retaliated against him for filing a grievance, the Court notes that Plaintiff, while locked down, missed his scheduled law library time and accordingly, he then filed the grievance for missing his scheduled law library time. Plaintiff was not put in lock down for filing a grievance, he filed his grievance for missing his law library time while in lock down. Furthermore, name calling or verbal abuse in and of itself does not state a claim under 42 U.S.C. § 1983.[5] See Stacey v. Ford, 554 F. Supp. 8, 9 (N.D. Ga. 1982); Thomas v. Savannah News Press Co., No. CV 487-307, 1987 WL 113751, at *8 (S.D. Ga. Dec. 3, 1987) (Edenfield, J.). Therefore, Plaintiff has failed to state a retaliation claim against Defendant Grant or Defendant Burnette. Thus, Plaintiff's retaliation claims should be **DISMISSED**.

E.     **No Due Process Claim**

Lastly, Plaintiff asserts that his due process rights were violated when Defendants Hart and Smith removed from his cell his Dungeon and Dragons game materials and books from him. Plaintiff also asserts a "Violation to U.S. Constitutional Rights from Capricious Behavior."[6] (Doc. no. 29, p. 11). Plaintiff's claims fail because the Fourteenth Amendment

---

[4]This claim is also not viable if asserted as a denial of access to the courts because Plaintiff has not alleged actual injury.

[5]Plaintiff does not state that he was put in the hole as a result of his encounter with Defendant Burnette. Rather, as previously noted, Plaintiff was already in the hole before he filed the grievance that was the topic of discussion.

[6]The Court interprets Plaintiff's claims concerning his Dungeon and Dragons materials and "Capricious Behavior" as due process claims. Plaintiff's Capricious Behavior

does not protect against all deprivations of property, only against deprivations that occur "without due process of law." Parratt v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986). Georgia has created a civil cause of action for the wrongful deprivation of personal property. O.C.G.A. § 51-10-1. This statutory provision covers the unauthorized deprivation of an inmate's property by prison officials. Grant v. Newsome, 411 S.E.2d 796, 799 (Ga. App. 1991). The statutory cause of action constitutes an adequate post-deprivation remedy under Parratt. Byrd v. Stewart, 811 F.2d 554, 555 n.1(11th Cir. 1987) (*per curiam*). Thus, Plaintiff has an adequate remedy under state law, and any remaining claims concerning his Dungeon and Dragons game materials and books, as well as payment for buffing his cell floor, should be **DISMISSED**.

### III. CONCLUSION

As Plaintiff has failed to state any claim upon which relief can be granted, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.[7]

---

claim seeks reimbursement from Warden Burnette for the money that Plaintiff paid another inmate to buff the floor in his cell. To the extent that he is claiming his property - the money paid to the inmate - was somehow wrongfully taken by Defendant Burnette, the Court presumes Plaintiff is asserting a due process violation.

[7]Plaintiff has also filed a motion requesting an order directing the United States Marshal's Service to serve Defendant Glen Johnson and requesting an extension of time to effect service. (Doc. nos. 5-1, 5-2). In light of the above recommendation, both of these requests should be deemed as **MOOT**. In any event, because Plaintiff has not been granted IFP status, he is not entitled to have the United States Marshals serve his complaint on Defendant Johnson, even if he had stated a valid claim for relief.

SO REPORTED and RECOMMENDED this 26th day of September, 2007, at Augusta, Georgia.

／s／ W. Leon Barfield
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE